# UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## NORTHERN DIVISION

In the Matter of:                 **}**

**}**

JAMES LELTON JONES, JR.    **}**    CASE NO. 20-81568-CRJ-7

KRISTI LYNN JONES,         **}**

                                    **}**

                                    **}**

                                    **}**    CHAPTER   7

              Debtor(s).        **}**

GLENN H. BLYTHE,         **}**    AP NO. 20-80141-CRJ-7

                                    **}**

                                    **}**

             Plaintiff(s),      **}**

      v.                             **}**

                                    **}**

                                    **}**

JAMES LELTON JONES, JR.    **}**

KRISTI LYNN JONES,         **}**

                                    **}**

             Defendant(s).     **}**

## MEMORANDUM OPINION ON COMPLAINT OBJECTING TO DISCHARGE

       This Adversary Proceeding came before the Court on April 28, 2021 for trial on the Complaint to Deny Defendants' Discharge Pursuant to § 727 of the U.S. Bankruptcy Code and to Declare Plaintiff's Debt Non-Dischargeable Pursuant to § 523 of the U.S. Bankruptcy Code (hereinafter "Complaint Objecting to Discharge") filed by Glenn H. Blythe (hereinafter the "Plaintiff") against James Lelton Jones, Jr. and Kristi Lynn Jones (hereinafter collectively the "Defendants," and individually "Mr. Jones" and "Mrs. Jones").   During the Pre-Trial Conference held on April 19, 2021, the Plaintiff withdrew Count One of the Complaint, Objection to Discharge of Debt Under 11 U.S.C. § 523(a)(2)(A).   At trial, the Plaintiff proceeded only with Count Two - Objection to Discharge Under 11 U.S.C. § 727(a)(4)(A); Count Three - Objection to Discharge

Under 11 U.S.C. § 727(a)(4)(D); Count Four - Objection to Discharge Under 11 U.S.C. § 727(a)(5); and Count Five – Objection to Discharge Under 11 U.S.C. § 727(a)(7).

At the conclusion of the trial, the Court entered an Order Requiring Post-Trial Briefs.[1] On June 7, 2021, the parties timely filed their respective briefs.[2] The Plaintiff states in his Post-Trial Brief that he is no longer pursuing Count Three – Objection to Discharge Under § 727(a)(4)(D), because the evidence adduced at trial revealed that the Chapter 7 Trustee did not seek an order compelling the Defendants to produce additional documents related to their financial affairs which is an essential element under the statute. The Plaintiff further states that he is no longer pursuing Count Five – Objection to Discharge Under 11 U.S.C. § 727(a)(7), because a prior case involving an insider of the Defendants was not filed within the one-year period preceding the Defendants' current case as required by the statute.

Accordingly, the only remaining issues to be decided by the Court are whether the Defendants' discharge should be denied under either § 727(a)(4)(A) for false oaths made in connection with their case, or under § 727(a)(5) for failure to explain satisfactorily any loss of assets to meet their liabilities. The Court has carefully considered the Post-Trial Briefs, the testimony and evidence adduced at trial, the arguments of counsel, and the applicable law, and finds that the Defendants' discharge should be denied pursuant to 11 U.S.C. § 727(a)(4)(A) given the cumulative nature of various false oaths made by the Defendants in connection with their current case.

---

[1]     Order Requiring Post-Trial Briefs, ECF No. 78.
[2]     *See* Plaintiff's Post-Trial Brief, ECF No. 81, and Post-Trial Brief filed by Defendants, ECF No. 80.

2

The Plaintiff argues that the Defendants' discharge should also be denied pursuant to § 727(a)(5) for failure to explain satisfactorily their deficiency of assets to meet their liabilities based on their failure to explain certain deposits in their checking account. Because the Court considered the Defendants' failure to explain the deposits at issue in determining that their discharge should be denied under § 727(a)(4)(A) as a false oath or omission, the Court need not address the Plaintiff's allegations under § 727(a)(5). The Court makes the following findings of fact and conclusions of law pursuant to Rule 52 of the Federal Rules of Civil Procedure as made applicable by Rule 7052 of the Federal Rules of Bankruptcy Procedure.[3]

## FINDINGS OF FACT

### A. Background and Procedural History

The Defendants reside in Cullman, Alabama. On the petition date, Mr. Jones had been employed by Wal-Mart Transportation as a truck driver for approximately 33 years. Although Mrs. Jones is a licensed cosmetologist, she was unemployed. The underlying controversy between the parties stems from a series of loans that the Plaintiff made to the Defendants when Mrs. Jones worked for the Plaintiff at his salon in Cullman, Alabama.

The Plaintiff contends that the Defendants are what are commonly referred to as "serial filers," debtors who file successive petitions without success or merely to hinder, delay, or prevent collection efforts by creditors. The Plaintiff reasons that the Defendants have repeatedly filed cases

---

[3] To the extent any of the Court's findings of fact constitute conclusions of law, they are adopted as such. Further, to the extent any of the Court's conclusions of law constitute findings of fact, they are adopted as such.

3

seeking relief under Chapter 13 of the Bankruptcy Code solely to prevent the Plaintiff from garnishing Mr. Jones' wages until the Defendants qualified for relief under Chapter 7 and could discharge the Plaintiff's claim without having to pay the unsecured debt through a Chapter 13 repayment plan.[4]

While the Defendants may or may not be serial filers given their success in obtaining successive Chapter 7 discharges, they are certainly not strangers to the process. In 1999, the Defendants filed separate cases in which they each received their first Chapter 7 discharge.[5] Since that time, the Defendants have filed five joint voluntary petitions in this Court under Chapters 7 and 13 of the Bankruptcy Code and have been represented by four bankruptcy attorneys who practice in Cullman, Alabama. As will be discussed more below, the Plaintiff argues, in part, that the Defendants intentionally failed to disclose a number of unsecured creditors in their 2019 Chapter 13 petition so they could propose a 100% plan in a reduced amount. The Plaintiff further argues that the Defendants never intended to complete the 60-month plan, but merely filed the cases long enough to stop his garnishment until they qualified for relief under Chapter 7. Interestingly, the Defendants waived the attorney-client privilege and three of their former attorneys testified regarding their standard office procedures when preparing bankruptcy petitions. While the Plaintiff spent much time belaboring this issue at trial and in this Post-Trial Brief, the Court does not find that it is dispositive nor tremendously relevant because the issue before the Court under § 727(a)(4)(A) is whether the Defendants made false oaths or accounts in their current

---

[4] *See* Plaintiff's Exhibit 34, Chart comparing bankruptcy filings from 2018, 2019, and 2020, reflecting significant changes in the number of unsecured creditors listed in each petition.

[5] *See* Plaintiff's Exhibit 5, Case No. 99-82747-7 filed by Kristi Jones, and Case No. 99-82790-7 filed by James L. Jones, Jr.

4

case. Nevertheless, the Court will briefly address the issue below to the extent necessary to show the Defendants' intent in their current case.

On May 11, 2012, the Defendants filed a joint Chapter 7 petition in the United States Bankruptcy Court for the Northern District of Alabama, Northern Division, Case No. 12-81553-7 (hereinafter the "2012 Case").[6] The Defendants were represented by Stephen Parker, Esq. in the 2012 Case. Mr. Parker also filed the Defendants' original petition and schedules in their current Chapter 7 case. At trial, Mr. Parker stated that he met with the Defendants in 2019 approximately one year before they filed their current case and advised them that they were not eligible for relief under Chapter 7 as a result of the discharge entered in their 2012 Case. Section 727(a)(8) of the Bankruptcy Code states that a debtor that has been granted a Chapter 7 discharge may not obtain another Chapter 7 discharge in a case commended within 8 years.[7] Thus, the Defendants could not obtain another Chapter 7 discharge in a case commended prior to May 11, 2020. The Defendants filed their current case in July of 2020.

It was during this eight-year window that the Defendants became indebted to the Plaintiff. The resulting debt has led to continuous litigation in this Court, as well as the Circuit Court of Cullman County, Alabama. Although other creditors may have "cut their losses," the Plaintiff has relentlessly pursued collection of his unsecured claim which the Defendants have persistently delayed by repeatedly seeking bankruptcy relief in this Court.

On November 20, 2012, the Plaintiff opened a Great Clips hair salon in Cullman, Alabama. In February of 2013, the Plaintiff first hired Mrs. Jones as a hairstylist and soon thereafter promoted

---

[6] *See* Plaintiff's Exhibit 6.
[7] *See* 11 U.S.C. § 727(a)(8).

her to manager.  Between March of 2014 and April of 2015, the Defendants obtained a series of

personal loans from the Plaintiff totaling $40,063.[8]  Thereafter, the Defendants made periodic

payments to the Plaintiff until Mrs. Jones resigned and opened her own salon the following year.

 On May 12, 2016, Mrs. Jones developed a business plan for Cuts by KJ, LLC, a hair salon

which she planned to open using funds in the amount of $67,500 obtained from her step-father,

Harry Radlund ("Mr. Radlund").[9]  On May 16, 2016, Mrs. Jones gave the Plaintiff a two-week

notice, resigning effective May 30, 2016. On May 24, 2016, Mr. Radlund wired $65,000 to Mrs.

Jones.[10]  As will be discussed further below, the Defendants repeatedly claimed that the funds

were a gift during each of their subsequent Chapter 13 cases. It was not until the Defendants

became eligible to file for relief under Chapter 7 in their current case that they listed Mr. Radlund

as an unsecured creditor and disclosed that he loaned Mrs. Jones $67,500 to open her salon. The

transaction is documented in a Loan Agreement dated June 1, 2016 pursuant to which Mrs. Jones

was to pay monthly installments to Mr. Radlund in the minimum amount of $766.45 with 6.5%

interest.[11]  The Court notes that the Loan Agreement admitted into evidence is not fully executed.

Mr. Radlund signed the Loan Agreement on June 1, 2016, however, the document admitted into

evidence was not executed by Mrs. Jones.  On July 7, 2016, Mrs. Jones registered Cuts Salon,

---

[8]     *See* Plaintiff's Exhibit 1, Loan Agreement dated July 25, 2014; Plaintiff's Exhibit 2, Loan
Agreement Amendment dated October 25, 2014; and Plaintiff's Exhibit 3, check dated April 25, 2015.
[9]     *See* Plaintiff's Exhibit 54, Proposed Business Plan.
[10]    *See* Plaintiff's Exhibit 43, Woodland National Bank statement for the period May 24 – May 31,
2016.
[11]    *See* Plaintiff's 44, Loan Agreement.

6

Inc. as a new corporation with the Alabama Secretary of State which she opened on September 15, 2016, a few blocks from the Plaintiff's salon.[12]

## B. 2016 Chapter 13 Case

On August 19, 2016, approximately ten days after the Plaintiff's collection attorney sent the Defendants' a letter demanding payment, the Defendants filed a voluntary petition under Chapter 13 of the Bankruptcy Code, Case No. 16-82380-CRJ-13, proposing to pay $720.00 per month for sixty months (hereinafter the "2016 Case"). During the 2016 Case, the Defendants listed the Plaintiff as an unsecured creditor on Schedule E/F.[13]   The Defendants did not schedule Mr. Radlund as an unsecured creditor on Schedule E/F of their petition.

On January 17, 2017, the Plaintiff filed a Motion to Dismiss Debtors' Chapter 13 Case, alleging, among other things, that the Defendants received gift income of $65,000.00 from Mr. Radlund which they did not disclose in their Schedules, nor include in their means test calculation.[14] As explained by the Supreme Court, the Chapter 13 "means test provides a formula to calculate a debtor's disposable income, which the debtor must devote to reimbursing creditors under a court-approved plan" pursuant to §§ 1325(b)(1)(B) and (b)(4).[15]

On March 20, 2017, the parties entered into an Agreed Order on Objection to Confirmation, Motion to Dismiss Case, and Motion for Contempt and Sanctions ("Agreed Order") pursuant to which, the parties agreed as a condition of confirmation that the Defendants' plan would have to pay 100% of allowed unsecured claims and could never be amended to provide a

---

[12]     *See* Plaintiff's Exhibit 53, Alabama Secretary of State Record for Cuts Salon, Inc.
[13]     *See* Plaintiff's Exhibit 8, Voluntary Petition.
[14]     *See* Plaintiff's Exhibit 9, Motion to Dismiss Debtors' Chapter 13 Case.
[15]     *Ransom v. FIA Card Services, N.A.*, 562 U.S. 61, 65, 131 S. Ct. 716, 721 (2011).

7

lower distribution to unsecured creditors.[16]  The Agreed Order further provided that the Defendants

"had not produced Bank Statements for the Woodforest Bank Account in [Mrs.] Jones name, alone

. . ." and ordered the Defendants to produce the bank statements immediately upon filing any

pleading that would result in less than a 100% distribution to allowed unsecured creditors.[17]

On March 31, 2017, the Court entered a Confirmation Order pursuant to which the

Defendants were to pay monthly payments of $720.00 for five months, $1,688.00 for twelve

months, and $2,650 for the remaining forty-three months.[18]  On June 5, 2017, the Court dismissed

the 2016 Case for failure to make plan payments.[19]  During the 2016 Case, the Defendants paid the

Chapter 13 Trustee a total of $3,600.00.[20] Secured creditors received $1,758.93 and unsecured

creditors received no distributions while the case was pending for approximately nine months.[21]

The Plaintiff contends that the Defendants never intended to pay the step-payments to which they

had agreed as a condition of confirmation, but agreed to those terms solely to avoid having their

case immediately dismissed.

Mrs. Jones closed her salon in August of 2017 just eleven months after she opened the

salon.  On November 8, 2017, the Plaintiff obtained a judgment against the Defendants in the

Circuit Court of Cullman County, Alabama in the amount of $65,088.56, following which he

began garnishing Mr. Jones' wages at Wal-Mart. The Defendants were represented by Richard

---

[16]      *See* Plaintiff's Exhibit 10, Agreed Order on Objection to Confirmation, Motion to Dismiss Case, and Motion for Contempt and Sanctions, filed by Creditor Glen H. Blythe.
[17]      *Id.*
[18]      *See* Plaintiff's Exhibit 11, Confirmation Order.
[19]      *See* Plaintiff's Exhibit 12, Trustee's Motion to Dismiss, and Plaintiff's Exhibit 13, Order Granting Motion to Dismiss.
[20]      *See* Plaintiff's Exhibit 14, Chapter 13 Trustee's Final Report and Accounting.
[21]      *Id.*

Collins, Esq., during their 2016 Case and in the Circuit Court action. The Plaintiff has pursued collection of the judgment debt by persistently garnishing Mr. Jones' wages when not prevented from doing so by operation of the automatic stay. As of April 14, 2021, the balance owed by the Defendants to the Plaintiff was $28,920.23, plus costs and interest.[22]

## C. 2018 Chapter 13 Case

On February 7, 2018, eight months following the dismissal of their 2016 Case, the Defendants filed a second voluntary petition for relief under Chapter 13 of the Bankruptcy Code, Case No. 18-80359-CRJ-13, proposing to pay $870.00 per month for sixty months (hereinafter the "2018 Case").[23] Mr. Collins filed the 2018 Case on behalf of the Defendants. Although the Defendants had agreed as a condition of confirmation in the 2016 Case to pay 100% to unsecured creditors, the Defendants in this subsequent case proposed a repayment plan which provided for no distributions to unsecured creditors. The Defendants scheduled 70 unsecured creditors, including the Plaintiff, in the 2018 Case, but did not list Mr. Radlund as a creditor.

On February 26, 2018, the Plaintiff filed an Objection to the Extension of Stay as to Creditor.[24] On March 2, 2018, the Court entered an Order: (1) Terminating Stay as to Creditor, Glen H. Blythe, Effective March 9, 2018; and (2) Granting Motion to Extend Stay as to All Other Creditors ("Order Terminating Stay").[25] The Court determined therein that the case was presumptively not filed in good faith pursuant to 11 U.S.C. § 362(c)(3)(C) based on the

---

[22]   *See* Plaintiff's Exhibit 55, Updated Garnishment Balance.
[23]   *See* Plaintiff's Exhibit 15, Chapter 13 Petition.
[24]   *See* Case No. 18-80359-CRJ, ECF No. 24
[25]   *See* Plaintiff's Exhibit 16.

9

Defendants' failure to produce bank statements during the 2016 Case and failure to make increased plan payments as agreed by the parties in resolution of Plaintiff's Motion to Dismiss.[26]

On May 9, 2018, the Court entered an Order Directing the Chapter 13 Trustee to Pay Held Funds to Creditor, Glen H. Blythe, representing prepetition garnished funds the amount of $1,655.24.[27] Thereafter, on May 15, 2018, the Court dismissed the 2018 Case for non-payment.[28] According to the Trustee's Report and Final Account, the Defendants did not make any plan payments during the pendency of the case.[29] Following dismissal, the Plaintiff reissued his garnishment against Mr. Jones.

**D. 2019 Chapter 13 Case**

On June 11, 2019, the Defendants filed a new voluntary petition for relief under Chapter 13 of the Bankruptcy Code, Case No. 19-81777-CRJ-13 (hereinafter the "2019 Case"), thirteen months following the dismissal of the 2018 Chapter 13 Case.[30] The Defendants were represented by Josh O'Neal, Esq., during the 2019 Case. On, July 14, 2019, the Plaintiff filed a Proof of Claim in the case in the amount of $43,742.30.[31]

The Defendants proposed to pay 100% to unsecured creditors in their 2019 Case, however, the Plaintiff argues that they strategically listed fifty-four fewer unsecured creditors in the 2019 Case than were listed in the 2018 Case, thereby decreasing the amount of unsecured debt to be

---

[26]     *Id.*
[27]     *See* Plaintiff's Exhibit 18.
[28]     *See* Plaintiff's Exhibit 17, Order Granting Trustee's Motion to Dismiss, and Exhibit 19, Trustee's Final Report and Account.
[29]     *See* Plaintiff's Exhibit 19.
[30]     *See* Plaintiff's Exhibit 20, Case No. 19-81777-CRJ-13.
[31]     *See* Plaintiff's Exhibit 4.

10

paid from $239,838.76 to $83,451.19. At trial, Mr. O'Neal testified that he explained to the Defendants that they would have to propose a 100% repayment plan given their history, but denied instructing the Defendants to list fewer unsecured creditors. Mr. O'Neal explained that he routinely prepares bankruptcy schedules by obtaining a debtor's credit report, but further explained that he instructs debtors to check their mail for additional bills from creditors to ensure that all creditors are listed.

On July 14, 2019, the Plaintiff filed an Objection to Confirmation and Motion to Dismiss.[32] On August 5, 2019, the Court dismissed the Defendants' case for non-payment.[33] The Trustee's Final Report and Account reveals that the Defendants made no payments during the 2019 Case.[34]

Thereafter, the Plaintiff reissued his garnishment against Mr. Jones' wages. On November 15, 2019, the Defendants mailed a letter to the Circuit Court of Cullman County, Alabama, seeking a reduction of the garnishment from 25% of their weekly income to 10%.[35] The Defendants explained to the Circuit Court that despite the contribution of income to household expenses by Mrs. Jones' elderly father and adult son, they would lose their home in which they also live with five minor children.[36] The Defendants have never disclosed this contribution of income from the father and son in any of their bankruptcy filings.

---

[32]  *See* Plaintiff's Exhibit 23, Objection to Confirmation Motion to Dismiss.
[33]  *See* Plaintiff's Exhibit 25, Order Granting Motion to Dismiss.
[34]  *See* Plaintiff's Exhibit 26, Chapter 13 Standing Trustee's Final Report and Account.
[35]  *See* Plaintiff's Exhibit 27, Letter.
[36]  *Id.*

11

### E.  2020 Chapter 7 Case

On July 7, 2020, the Defendants commenced their current case ("2020 Case") by filing a voluntary petition for relief under Chapter 7 of the Bankruptcy Code.  Concurrently with their petition, the Defendants filed various required schedules and statements, including Form 106SUM Summary of Assets and Liabilities and Certain Statistical Information  ("Original Summary of Assets and Liabilities"); Schedules A/B through J; Form 106Dec Declaration About an Individual Debtor's Schedules ("Declaration"); Official Form 107 Statement of Financial Affairs for Individuals Filing for Bankruptcy ("Original SOFA"); Official Form 108 Statement of Intention for Individuals Filing Under Chapter 7 ("Original Statement of Intent"); and Official Form 122A-1 Chapter 7 Statement of Current Monthly Income ("Original Means Test").[37]

#### i.       Original Disclosures

On their Original Summary of Assets and Liabilities, the Defendants reported assets valued at $28,422.28, liabilities totaling $276,892.03 ($40,276 secured and $236,616.03 unsecured), current monthly income in the amount of $8,317.83, combined monthly income in the amount of $4,295.36, and monthly expenses totaling $7,633.21.[38]  Similarly on Schedule I: Income, the Defendants listed Mr. Jones' gross monthly wages as $8,319.78.  The Defendants did not report any income for Mrs. Jones. From their gross monthly wages, the Defendants deducted, among other amounts, the Plaintiff's garnishment in the amount of $1,753.94, leaving combined monthly

---

[37]       *See* Plaintiff's Exhibit 28, Voluntary Petition for Individuals Filing for Bankruptcy, Case No. 20-81568-CRJ-13.
[38]       *See* Plaintiff's Exhibit 28.

income in the amount of $4,295.36. Despite deducting the garnishment from their gross monthly income, on line 21 of Schedule J, the Defendants listed the garnishment again which increased their expenses by $1,700 and reported total monthly expenses in the amount of $7,633.21.

Pursuant to 11 U.S.C. § 521(a)(1)(B)(iv), the Defendants were required to file a copy of all payment advices or other evidence of payment received within sixty days before the petition date, but failed to do so. Instead, the Defendants calculated their current monthly income using payment advices dated October 31, 2019 through January 3, 2020 which they filed concurrently with their petition.[39]

On their Original Means Test, the Defendants likewise reported Mr. Jones' gross monthly wages as $8,317.83 and listed no income for Mrs. Jones, which resulted in annualized income of $99,813.96.[40] The Defendants have five dependents between the ages of 17 and 10 months old.[41] The median income in Alabama for a family of seven is $109,991.00 for purposes of determining whether the means test applies. Accordingly on their Original Means Test, the Defendants checked the box indicating that "[t]here [was] no presumption of abuse," given that their reported income was below the applicable threshold.[42] At trial, the Defendants admitted that the figures included in their Original Means Test were not accurate and that mistakes were made. The Plaintiff argues that the Defendants' actual gross monthly wages were $9,235,86 for purposes of calculating the

---

[39] *See* Plaintiff's Exhibit 29, Summary of Assets and Liabilities.
[40] *See* Plaintiff's Exhibit 31.
[41] *See* Plaintiff's Exhibit 29, Schedule J.
[42] *See* Plaintiff's Exhibit 31.

13

means test based on Mr. Jones' pay advices for the applicable six-month period preceding the petition date which totaled $55,415.08 or $9,235.86 monthly.[43]

On Schedule A/B: Property, the Defendants listed personal property totaling $28,422.28, including a 2016 Chevrolet Tahoe valued at $23,462.[44]   The Defendants purchased the 2016 Tahoe following the dismissal of their 2019 Case.   On Schedule D: Creditors Who Have Claims Secured by Property, the Defendants listed Santander as a creditor, with a claim in the amount of $40,276.00 secured by the 2016 Chevrolet Tahoe.[45]   Mr. Radlund co-signed the loan. The Defendants indicated on their Original Statement of Intent and their Original Means Test that they intended to retain the 2016 Chevrolet Tahoe and to enter into a Reaffirmation Agreement with Santander.[46]   Instead, on December 28, 2020, Mr. Jones signed a Voluntary Surrender Agreement, voluntarily surrendering the 2016 Chevrolet Tahoe to Santander Consumer USA.[47]

The Defendants failed to list a 2006 Volvo on Schedule A/B which they listed in previous cases.   Mr. Jones testified that the vehicle is inoperable, but the Defendants still own the vehicle.

On Schedule E/F: Creditors Who Have Unsecured Claims, the Defendants scheduled sixty-six unsecured creditors, including the Plaintiff and Mr. Radlund.   In their Post-Trial Brief, the Defendants concede that they previously listed the funds received from Radlund as a gift.[48]

---

[43]     *See* Plaintiff's Exhibit 32.
[44]     *See* Plaintiff's Exhibit 29, Schedule A/B.
[45]     *See* Plaintiff's Exhibit 29, Schedule D.
[46]     *See* Plaintiff's Exhibit 29, Statement of Intent and Means Test.
[47]     *See* Plaintiff's Exhibit 33.
[48]     *See* Post-Trial Brief Filed by Debtor Defendants James Lelton Jones, Jr. and Kristi Lynn Jones, ECF No. 80, p. 13.

14

In their Original SOFA, in response to Part 2: Explain the Sources of Your Income, Questions 4 and 5, the Defendants stated that they had no income during 2020 nor the two previous calendar years from either employment or from operating a business, nor from any other source. The instructions to Question 5 directed the debtors to "[i]nclude income regardless of whether that income is taxable. Examples of *other income* are alimony, child support, Social Security, unemployment, and other public benefit payments; pensions; rental income; interest; dividends; money collected from lawsuits; royalties; gambling and lottery winnings."[49]

In response to Part 3: List Certain Payments You Made Before You Filed for Bankruptcy, Question 6, the Defendants affirmed that they no made payments to any creditor totaling $600 or more during the 90 days preceding the petition date.[50] On Part 4: Identify Legal Actions, Repossessions, and Foreclosures, the Defendants listed the Circuit Court action filed by the Plaintiff in response to Question 9 which directed the Defendants to disclose any lawsuit or court action to which they were a party within 1 year preceding the petition date, but in response to Question 10 the Defendants stated that they did not have any property garnished during the same 1 year period.[51]

In their Original SOFA, Part 8: List of Certain Financial Accounts, Instruments, Safe Deposit Boxes, and Storage Units, Question 20, required the Defendants to list within 1 year prior to the petition date any financial accounts held in their name or for their benefit, closed, sold, moved of transferred. The Defendants did not disclose an account at America's First Federal

---

[49]  *See* Plaintiff's Exhibit 28, SOFA, Part 2, Question 4.
[50]  *See* Plaintiff's Exhibit 28, SOFA,
[51]  *Id.*

Credit Union on which Mrs. Jones is listed as joint owner along with her father, Elvin Morris.[52] The Defendants explained that Mrs. Jones withdraws $300 to $500 per month from the account for her father. The Defendants also failed to list an account on their Original SOFA in response to Question 20 at Premier Bank which will be discussed further below.[53]

In their Original SOFA, Part 11: Give Details About Your Business or Connections to Any Business, Question 27 required the Defendants to disclose any ownership interest in a business owned within 4 years before they filed their petition. The Defendants failed to disclose Mrs. Jones ownership of Cuts Salon Inc. which she closed in August of 2017 within the four-year look back period.[54]

On July 8, 2020, Judith L. Thompson was appointed as the Defendants' Chapter 7 Trustee.[55] On August 10, 2020, the Defendants amended Schedule J to remove the Plaintiff's garnishment as an expense which reduced their monthly expenses from $7,633.21 to $5,933.21 and increased their monthly net income to -$1,637.85.[56] On August 13, 2020, the Chapter 7 Trustee conducted a § 341 Meeting of Creditors and filed her No Asset Report the following day.[57] It is undisputed that the Trustee never requested any further documents from the Defendants nor sought dismissal of their case for failure to comply with any provisions of the Bankruptcy Code.

At trial, Stephen Parker, Esq., testified that he filed the original Chapter 7 petition on behalf of the Defendants, as well as the 2012 Case in which the Defendants obtained their second Chapter

---

[52]     *See* Plaintiff's Exhibit 58.
[53]     *See* Plaintiff's Exhibit 51.
[54]     *See* Plaintiff's Exhibit 28, SOFA.
[55]     ECF No. 7, Order Appointing Trustee.
[56]     *See* Defendants' Exhibit 20.
[57]     Docket entry dated August 14, 2020, Chapter 7 Trustee's Report of No Distribution.

7 discharge. Mr. Parker explained that he used information received from the Defendants to prepare their petition, but never obtained an original signed document by the Defendants giving him permission to file the completed documents. Mr. Parker further testified that he submitted the Defendants real estate information and tax returns to the Chapter 7 Trustee prior to their § 341 Meeting as required by 11 U.S.C. § 521(e)(2).

On October 13, 2020, the Plaintiff commenced this Adversary Proceeding seeking denial of the Defendants' Chapter 7 discharge. The Defendants admit that they made certain "false oaths on their means test Form 122-A, Schedule I and J, and Statement of Financial Affairs."[58] Nevertheless, the Defendants argue that the false oaths and omissions are excusable and do not warrant denial of their discharge because they retained new counsel to amend their schedules after the Plaintiff initiated this Adversary Proceeding.

    ii.    **Amendments to Schedules**

On November 17, 2020, Seth Thompson, Esq., filed a Notice of Appearance as counsel for the Defendants and filed amended pay advices which included Mr. Jones' wages from December 7, 2019 through May 8, 2020.[59]  Although Mr. Parker testified that the pay advices were in his file, they were not filed with the Court before the Plaintiff filed this Adversary Proceeding.  On November 18, 2020, the Defendants filed an amended Official Form 122A-1 Chapter 7 Statement of Current Monthly Income ("Amended Means Test"), listing Mr. Jones' gross monthly wages as $9,144 based on the amended pay advices.[60]

---

[58]    Proposed Pretrial Order, ECF No. 68, p. 23, ¶ 19.
[59]    *See* ECF No. 33 and Defendants' Exhibit 2.
[60]    *See* Defendants Exhibit 23.

On February 1, 2021, the Defendants filed amended Schedules I and J ("Amended Schedule I" and "Amended Schedule J"), reporting Mr. Jones' gross monthly wages $8,686.84.[61] The Defendants calculated this figure based on Mr. Jones' income during the six month period preceding the petition date, less $3,294 which Mr. Jones received for adoption expenses reimbursed by his employer. The Defendants also filed second amended pay advices on February 1, 2021 and included an explanation regarding the adoption expense reimbursement.[62] Mr. Jones' January 23, 2020 paycheck included $3,294 for the reimbursement of expenses paid by the Defendants between February 28, 2018 and August 5, 2019.[63] To qualify for the reimbursement, Mr. Jones certified on January 8, 2020 that he had reviewed Walmart's Adoption Benefit Policy and that the expenses had not been and would not be reimbursed from any other source or taken as a tax credit on any income tax return for any year.[64] On March 6, 2021, while the Adversary Proceeding was scheduled for trial, the Defendants filed an Amended Income Tax Return for the 2019 tax year to claim a refund in the amount of $3,294 for the 2019 adoption expenses[65]

The parties dispute whether the reimbursement benefit provided by Mr. Jones' employer should be included as income for purposes of calculating the Defendants' current monthly income. If the reimbursement is included in Mr. Jones' gross monthly wages, the Defendants' annualized income increases to $110,830.16 which exceeds the median income of $109,991.00 for a family of seven in Alabama, raising a presumption of abuse under the means test.

---

[61]    *See* Defendants' Exhibit 25.
[62]    *See* Defendants' Exhibit 27, Walmart Adoption Benefits Request for Reimbursement and IRS Topic No. 607 Adoption Credit and Adoption Assistance Programs.
[63]    *See* Defendants' Exhibit 27.
[64]    *Id.*
[65]    *See* Plaintiff's Exhibit 41, 1040-X Amended U.S. Individual Tax Return.

18

Case 20-80141-CRJ    Doc 82    Filed 07/13/21    Entered 07/13/21 15:34:49    Desc Main
Document    Page 18 of 37

In addition to the adoption expenses, the Plaintiff argues that the Defendants failed to include regular income on Amended Schedule I which they receive from Mrs. Jones' father, WIC income, and other unexplained deposits. Although the Defendants stated in a letter filed with the Circuit Court of Cullman County, Alabama that they receive income from Mrs. Jones' father, as well as their adult son, they failed to disclose such income in their 2020 Case. At trial, Mrs. Jones admitted that her elderly father lives with the Defendants and that he makes regular contributions to household expenses by paying the satellite bill and groceries. The Defendants failed to disclose this regular contribution of income in their original schedules nor in their amended schedules. However, on Amended Schedule J, the Defendants scheduled an expense in the amount of $292.06 for Direct TV and Pest Control, a portion of which is admittedly paid by Mrs. Jones' father.

At trial, Mrs. Jones also admitted that she received WIC benefits in the amount of $142.80 per month during 2020 which were not listed in the 2020 Case.[66] Mrs. Jones stated that she reported the income to her bankruptcy attorney, but the income was not included in her Means Test.

During the six-month period preceding the petition date, the Defendants deposited funds in their checking account totaling $3,600 which neither Defendant could explain at trial. On March 15, 2020, the Defendants deposited $1,700 in their account; $700 on April 6, 2020; $500 on May 17, 2020; and $700 on June 1, 2020.[67] Mr. Jones testified that the deposits were not included in the information that they gave to their attorney to file their 2020 Case. Mr. Jones further testified that he did not attend every meeting with the attorney who filed his 2020 Case

---

[66] *See* Plaintiff's Exhibit 64.
[67] *See* Plaintiff's Exhibit 51.

19

because he works as a truck driver. He further admitted that certain information contained in the Defendants' original schedules was not correct, but stated that he did not independently verify the amounts and information included in his petition. Mrs. Jones also testified she was unsure where the money came from, but speculated that it could have been money that she received from either her father or an adult son. The Plaintiff speculates that Mrs. Jones is earning extra unreported income as a hairstylist because the Defendants have not explained the disposition of Mrs. Jones' salon equipment and scheduled a monthly expense in the amount of $810 for childcare and education costs.

On January 15, 2021, the Defendants filed an amended Official Form 107 Statement of Financial Affairs ("Amended SOFA").[68] In response to Question 4, the Defendants reported wages from January 1, 2020 through the petition date of $55,415.08; total 2019 wages of $86,632; and total 2018 wages of $91,938. The Defendants failed to report the income in their Original SOFA.

In response to Question 5, the Defendants reported additional income for 2019 in the amount of $2,476.12 and 2018 in the amount of $3,125 from 401(k) withdrawals. The Defendants did not report the 401(k) withdrawals on their Original SOFA.[69] Mr. Jones testified that he made the 2019 withdrawal on December 13, 2019 to pay adoption expenses.

In response to Question 6 on their Amended SOFA, the Defendants disclosed that they paid Santander $2,342.85 during the 90-day period prior to the petition date, despite reporting that no payments exceeding $600 were made to any creditors in their Original SOFA. In response to

---

[68]     *See* Defendants' Exhibit 24.
[69]     *See* Defendants' Exhibit 23.

Question 10, the Defendants also disclosed that the Plaintiff garnished $11,622.62 from Mr. Jones' wages between December 21, 2019 and June 25, 2020, despite originally failing to list such garnishment.

The Defendants also listed their checking account at Premier Bank of the South in response to Question 20, and disclosed Mrs. Jones' ownership interest in Cuts Salon, Inc in response to Question 27.[70]  While the Defendants listed the Premier Bank of the South checking account in their original petition on Schedule A/B and indicated that the account had a balance of $720.00, they failed to list the account on their Original SOFA.

Despite having testified in prior cases that funds in the approximate amount of $65,000 which Mrs. Jones obtained from Mr. Radlund were a gift, the Defendants also finally admitted Mrs. Jones borrowed the funds from Mr. Radlund to open her salon. The Defendants did not list Mr. Radlund as a creditor in their prior cases. Mrs. Jones testified that she made two payments on the loan to Mr. Radlund.  During the trial, the Defendants offered a report itemizing how they quickly spent all of the funds.[71]  The Defendants used $22,000 to catch up their mortgage payments and to take a family vacation to Orange Beach, Alabama.[72]  Mrs. Jones used approximately $6,000 of the funds to lease equipment from TimePayment and to purchase other supplies for Cuts Salon, Inc. and spent the balance of the funds on personal items such as clothing, food, and gifts.

In both their Original SOFA and their Amended SOFA, the Defendants failed to disclose Mrs. Jones' ownership interest in a joint checking account which she holds with her father, Elwin

---

[70]     *See* Defendants Exhibit 23.
[71]     *See* Plaintiff's Exhibit 32.
[72]     *Id.*

21

Morris, at America's First Federal Credit Union. The balance in the account as of July 2, 2020 was $56.32.[73]   The Defendants also failed to list their interest in a Wal-Mart Network account which had small balance of $20.76 immediately prior to the petition date.[74]

      iii.     **Disputed Interest in Real Property**

      The Plaintiff alleges that the Defendants failed to disclose that they are purchasing real property under a land sale contract in which they have equity that they have not claimed as exempt. On February 5, 2014, the Defendants entered into a Real Estate Sales Agreement ("Agreement") with Walker Brothers, Ltd. ("Walker Brothers").[75] The Agreement states that Walker Brothers agrees to sell and convey the real property to the Defendants with the last monthly payment being due February 15, 2044.   The Agreement further provides that in the event the Defendants fail or refuse to pay as agreed, Walker Brothers, at its option, shall cancel and terminate the Agreement and all monies paid will be forfeited and considered as rent.[76]    In the 2016 Case, the Defendants listed their ownership interest in the real property located at 350 County Road 416, Cullman, AL 35057 on Schedule A/B, valuing same at $181,000.[77]   In their 2018 Case, the Defendants listed the property on Schedule G as a "Lease of Residence."[78] The Defendants have not disclosed any ownership or leasehold interest in the property in subsequent filed cases despite continuing to live in the property.[79]

---

[73]     *See* Plaintiff's Exhibit 50.
[74]     *See* Plaintiff's Exhibit 32.
[75]     *See* Plaintiff's Exhibit 47, Real Estate Sales Agreement.
[76]     *Id.*
[77]     *See* Plaintiff's Exhibit 8, 2016 Case - Schedule A/B.
[78]     *See* Plaintiff's Exhibit 15.
[79]     *See* Plaintiff's Exhibits 20 and 28, Schedule G.

The Defendants both testified that they did not timely make their monthly payments and contend that Walker Brothers terminated the Agreement. Mr. Jones testified that they now have a verbal lease agreement to rent the house from Walker Brothers at the reduced amount of $850 per month. At trial, the Plaintiff offered into evidence current payment coupons from Walker Brothers which reflect the receipt of "house" payments.[80] The Plaintiff also offered the Defendants' homeowners insurance policy for October 2, 2020 through October 2, 2021 which reflects that the Defendants are paying for homeowners insurance rather than renters' insurance.[81] Mr. Jones testified that the policy has now lapsed, but explained that his wife mistakenly continued paying for homeowners insurance rather than converting their policy to renters insurance after they began renting the property.

## CONCLUSIONS OF LAW AND RULING

Based upon the forgoing, the Plaintiff asserts that the Defendants' discharge should be denied pursuant to 11 U.S.C. § 727(a)(4)(A) because they knowingly and fraudulently made false oaths and accounts in connection with their case by: (i) underreporting their income and inflating expenses on their Original Schedules; (ii) falsifying their Means Test; (iii) failing to list assets, including a 2006 Volvo XC 90, Cuts Salon, Inc., and real property; and (iv) failing to disclose withdrawals from their 401(k), the America's First Federal Credit Union account, and payments to creditors on their Original SOFA. The Defendants admit that they made certain false oaths or omissions in their Original Schedules and SOFA, but argue that the omissions were inadvertent

---

[80]     *See* Plaintiff's Exhibit 62.
[81]     *See* Plaintiff's Exhibit 63.

and do not warrant the denial of discharge because they retained new counsel and amended their schedules after realizing that their reliance on their attorney was misplaced. The Defendants further argue that the Plaintiff's contentions have either been disproven or result in a very small increase in assets of the estate.

## A. Exceptions to Discharge Generally

"A Chapter 7 debtor is generally entitled to a discharge of all debts that arose prior to the filing of the bankruptcy petition."[82]  In return, a Chapter 7 debtor's "assets, subject to certain exemptions, are immediately transferred to [the] bankruptcy estate" for prompt liquidation by the Chapter 7 trustee.[83] "Although a Chapter 7 debtor 'must forfeit virtually all his prepetition property,' the [Bankruptcy Code] give[s] the debtor an immediate fresh start and a break from the financial past 'by shielding from creditors his postpetition earnings and acquisitions.'"[84]

"To ensure that only honest but unfortunate debtors receive the benefit of discharge, Congress enacted several exceptions to § 727(b)'s general rule of discharge."[85]  Nevertheless, "the denial of a debtor's discharge is an 'extraordinary remedy' and an 'extreme penalty.'"[86] "[T]he reasons for denying a discharge . . . must be real and substantial, not merely technical and conjectural."[87]  Thus, courts generally construe objections to discharge strictly against an objecting creditor and liberally in favor of a debtor.[88] "This narrow construction ensures that the 'honest but

---

[82]    *In re Kane*, 755 F.3d 1285, 1292 (11th Cir. 2014)(quoting *In re Mitchell*, 633 F.3d 1319, 1326 (11th Cir. 2011)).
[83]    *Slater v. United States Steel (In re Slater),* 871 F.3d 1174, 1179 (11th Cir. 2017).
[84]    *Id.*
[85]    *In re Kane*, 755 F.3d at 1292 (quoting *In re Mitchell*, 633 F.3d at 1326).
[86]    *Fiandola v. Moore (In re Moore)*, 508 B.R. 488, 494 (Bankr. M.D. Fla. 2014).
[87]    *Equitable Bank v. Miller (In re Miller)*, 39 F.3d 301, 304 (11th Cir. 1994)(citations omitted).
[88]    *In re Moore*, 508 B.R. at 494.

unfortunate debtor' is afforded a fresh start."[89]

The Plaintiff argues that the Defendants are not "honest but unfortunate debtors" given the frequency with which the Defendants have filed for relief under the Bankruptcy Code, the multiple different counsel employed in their many cases, the inconsistent statements made and filed in each of their cases, and the de minimus payments made by the Defendants while in their prior Chapter 13 cases. Nevertheless, pursuant to Rule 4005 of the Federal Rules of Bankruptcy Procedure, "[a]t trial on a complaint objecting to a discharge, the plaintiff has the burden of proving the objection."[90] The party objecting to discharge has the burden of proving each element of its claim under § 727 by a preponderance of the evidence.[91] If the party objecting to discharge brings forward credible evidence establishing its claim, the burden of persuasion "shifts to the debtor to convince the court not to deny discharge based on the objecting party's evidence."[92]

## B.  Denial of Discharge Pursuant to 11 U.S.C. § 727(a)(4)(A)

Pursuant to § 727(a)(4)(A) of the Bankruptcy Code, the Court shall grant a debtor a discharge, unless "the debtor knowingly and fraudulently, in connection with the case . . . made a false oath or account."[93] The purpose of the false oath exception under § 727(a)(4)(A) is not to punish a debtor for mere inadvertence in scheduling an asset. Rather, the exception is intended to ensure that the Chapter 7 trustee, creditors, and any interested parties have sufficient information "to investigate the debtor's affairs and recover any assets without having to conduct "costly

---

[89]     *In re Miller*, 39 F.3d at 304.
[90]     FED. R. BANKR. P. 4005.
[91]     *Phillips v. Epic Aviation (In re Phillips)*, 476 Fed. Appx. 813, 816 (11th Cir. 2012); *See also In re Moore*, 508 B.R. at 494.
[92]     *In re Phillips*, 476 Fed. Appx. at 816.
[93]     11 U.S.C. § 727(a)(4)(A).

investigations."[94] "[I]f the omission would not assist or impede . . . creditors in this endeavor, it is not material."[95] Thus, "[t]o justify denial of discharge under § 727(a)(4)(A), the false oath must be fraudulent and material."[96]

### i.    In Connection With the Case

In their Post-Trial Brief, the Defendants contend that their previous alleged wrong acts may not be used as evidence of whether their alleged acts and wrongs were done knowingly and fraudulently in their 2020 Case.   While this Court agrees that the Defendants' alleged wrongs in their prior cases are not actionable in this case, the Court finds that such acts are relevant for purposes of showing the Defendants' intent and their general understanding of the bankruptcy process as repeat filers.

To be actionable under § 727(a)(4)(A), the false oath, statement, or omission, must have been made in connection with the Defendants' current bankruptcy case pursuant to the plain language of the statute.[97]   Thus, false oaths made in a prior case are not actionable under § 727(a)(4)(A) in a subsequent case.

False oaths made in a prior case may nevertheless be admissible in a subsequent case for purposes of establishing a debtor's fraudulent intent.[98]   In the case of *In re Taylor,* the debtor filed

---

[94]    *Locci v. Siewe (In re Siewe)*, 2017 WL 2562304 *5 (Bankr. N.D. Ga. 2017)(Hagenau, J.); *See also Sethi v. Wells Fargo Bank (In re Sethi)*, 2014 WL 2938276 *9 (9th Cir. BAP 2014).

[95]    *In re Siewe*, 2017 WL 2562304 at *5.

[96]    *Protos v. Silver (In re Protos)*, 322 Fed Appx. 930, 933 (11th Cir. 2009)(quoting *Swicegood v. Ginn,* 924 F.2d 230, 232 (11th Cir. 1991)).

[97]    *In re Sethi*, 2014 WL 2938276 at *10 (citing *Micoz v. Carter (In re Carter)*, 125 B.R. 631, 634 (Bankr. D. Utah 1991)(holding that false statements made during a debtor's first case were not actionable in the debtor's second case for purposes of § 727(a)(4)(A)).

[98]    *See Walton v. Taylor (In re Taylor),* 2014 WL 1330561 (Bankr. S.D. Ga. 2014)(Coleman, J.).

a motion in limine, seeking to exclude the admission of certain documents and recordings made during a prior bankruptcy case.[99]   The debtor argued that evidence of fraud in a prior case must be excluded when the court is considering an objection to discharge in a subsequent case because § 727(a)(4)(A) only applies "in or in connection with the case" in which the debtor is seeking a discharge.   The trustee countered that the dockets and operating reports in the debtor's prior case were relevant because they demonstrated a course or pattern of conduct revealing the debtor knowingly made false oaths on multiple occasions about not receiving any money from the sale of property which was relevant for purposes of determining whether the debtor knowingly made false oaths during the § 341 meeting held in his current case.

The *Taylor* court first explained that a false oath made in a case which is ultimately dismissed is not grounds for denial of discharge in a subsequently filed case. Nevertheless, the bankruptcy court found that evidence of false oaths made in a prior case are admissible in a subsequent case for purposes of determining fraudulent intent.[100] Accordingly, the bankruptcy court denied the debtor's motion in limine, explaining that the "scope of what is relevant [under § 727(a)(4)(A)] appears to be exceedingly broad."[101] "[T]he trier of fact is permitted to hear evidence and testimony surrounding all of the circumstances of the [prior] case in order to give the court some *context* to the allegations of the complaint."[102] Likewise, the Court finds in this case that the Defendants' prior false oaths are relevant in this proceeding for the limited purpose of determining whether the Defendants' false oaths and accounts made in connection with this case

---

[99]    *Id.*
[100]   *Id.* at 8.
[101]   *Walton v. Taylor (In re Taylor)*, 2014 WL 1330561 *6   (Bankr. S.D. Ga. 2014).
[102]   *Id.*

were made knowingly and fraudulently or were the result of mere advertence as the Defendants allege.

## ii.    Knowing and Fraudulent Intent

"To justify denial of discharge under § 727(a)(4)(A), the false oath must be fraudulent and material."[103]   Whether a debtor has made a false oath knowingly and fraudulently is a question of fact which the Court must determine after considering the totality of the circumstances. In the Eleventh Circuit, fraudulent intent may be proven by circumstantial evidence which "depends largely upon an assessment of the credibility and demeanor of the debtor."[104] "Indeed, because debtors generally will not testify as to their own misconduct, that a false oath was made knowingly and fraudulently is generally proven by circumstantial evidence or inferences drawn from circumstances surrounding the debtor."[105]

The Eleventh Circuit has explained that "a discharge pursuant to § 727(a)(4)(A) should not be granted where the debtor knowingly and fraudulently made a false oath or account in connection with the bankruptcy proceeding."[106]   Likewise, "[a] knowing and fraudulent omission from a sworn Statement of Affairs or schedule may [likewise] constitute a false oath."[107]   *See Whigham v. United Asset Holdings Residential (In re Whigham),* 770 Fed. Appx. 540, 545 (11th Cir.

---

[103]    *Swicegood v. Ginn*, 924 F.2d at 232; *See also Whigham v. United Asset Holdings Residential (In re Whigham),* 770 Fed. Appx. 540, 545 (11th Cir. 2019); and *Jackson v. Jackson (In re Jackson)*, 724 Fed. Appx. 905, 909 – 910 (11th Cir. 2018).

[104]    *In re Phillips*, 476 Fed. Appx. at 813; *See also In re Protos*, 322 Fed Appx. at 930, n. 3 (11th Cir. 2009)(stating "the debtor's intent may be established by circumstantial evidence or inferred from the debtor's course of conduct").

[105]    *Id.*

[106]    *Chalik v. Moorefield (In re Chalik),* 748 F.2d 616, 618 (11th Cir. 1984) (per curiam).

[107]    *In re Chalik,* 748 F.2d at 616 n.3.

28

2019)(failure to disclose an account held in trust on four separate court filings and during two separate examinations constituted false oaths); *Phillips v. Epic Aviation (In re Phillips)*, 476 Fed. Appx. 813, 816 (11th Cir. 2012)(debtor was required to list on his SOFA an undocumented $50,000 transfer of real estate interest made within two years preceding the petition date).

"Untrue statements in a declaration signed by the debtor under penalty of perjury and submitted to the court [also] qualify as a false oath for purposes of § 727(a)(4)(A)."[108]   For instance, in the case of *Sethi v. Wells Fargo Bank (In re Sethi)*, the Bankruptcy Appellate Panel for the Ninth Circuit explained that a declaration signed by a debtor adopting her petition and schedules as her own constituted a false oath where debtor failed to actually read or sign petition, thereby leading creditors to believe she had reviewed the petition.   The false oath was an omission or misstatement which detrimentally affected the administration of the debtor's estate by leading creditors and the court to believe her original petition and schedules had some measure of reliability.

In the case of *In re Whigham*, the bankruptcy court held that a debtor's failure to disclose an account held in trust for her son in which she made large prepetition deposits was deliberate, knowing, and fraudulent for purposes of § 727(a)(4)(A).[109]   On appeal before the Eleventh Circuit, the debtor argued that to the extent she was required to disclose the account her failure to do so was inadvertent, as she was only reminded of the existence of the account while researching her prepetition financial condition in connection with the discharge complaint.   The Court of

---

[108]   *In re Sethi*, 2014 WL 2938276 at *9.
[109]   *Whigham v. United Asset Holdings Residential (In re Whigham),* 770 Fed. Appx. 540, 545 (11th Cir. 2019).

Appeals founds that the debtor's explanation "strained credulity" in light of the large deposits the debtor made into the account.[110]

In the case of *Swicegood v. Ginn*, 924 F.2d 230, 232 (11th Cir. 1991), the Eleventh Circuit affirmed the denial of the debtor's discharge pursuant to § 727(a)(4)(A), finding that a debtor's omission of assets (a Rolex watch, a set of silver flatware and two demitasse cups, two shares of AT&T stock, and golf clubs) was deliberate where: (i) the debtor amended his schedules to include omitted assets only after he discovered that his ex-wife had revealed the omissions to a judgment creditor; (ii) even after the debtor amended his schedules, he significantly undervalued the assets; and (iii) one of the omitted assets included a Rolex watch which he routinely wore.

Here, the Defendants admit that certain mistakes or false oaths were made in this case when they filed their Original Means Test Form 122-A, Schedules I and J, and SOFA, but argue that they that they hired new counsel and filed amended documents fully disclosing and correcting their misstatements and false oaths. The Defendants contend that the mistakes on their Original Schedules and Original SOFA were not made with a knowing intent to defraud creditors, nor to hide assets or transfers of property, nor with fraudulent intent to deceive creditors. The Defendants further contend that the attorney who filed their petition did not have an original signed document from the Defendants giving him permission to file the completed documents.

In *Protos v. Silver (In re Protos)*, 322 Fed Appx. 930 (11th Cir. 2009), the debtor argued that he lacked fraudulent intent with respect to an omission of a security interest and pending litigation which were just disclosed in the wrong place in his schedules and SOFA and omitted

---

[110]    *Id.*

liabilities which he disclosed to his attorney. The debtor did not dispute the bankruptcy court's finding that he either failed to make certain disclosures or made improper disclosures, but argued that he lacked fraudulent intent because the omissions were inadvertent. "While a single, isolated instance of non-disclosure or improper disclosure *may* not support a finding of fraudulent intent," the Eleventh Circuit explained "that the repeated nature of non-disclosure and improper disclosures made by [debtors] in [their] schedules and SOFA" will clearly support a finding of fraudulent intent.[111]

Here, the Court finds that the repeated nature of omissions and improper disclosures in the Defendants' Original Schedules, as well as their Amended Schedules, to be clear evidence of the Defendants' fraudulent intent. The Court further finds the Defendants suggestion that the omissions and improper disclosures were either merely inadvertent or should be excused because they failed to review the documents before they were filed is clearly disingenuous. First, the Court notes that on March 27, 2020, the Northern District of Alabama entered Administrative Order 20-06 Order Temporarily Suspending Requirement to Obtain Original Signatures from Debtors for Electronic Filings, which was extended by Administrative Order 20-10. Administrative Order 20-06 states in part as follows:

> For all documents requiring a debtor's signature, the court temporarily suspends the requirement that an attorney secure the debtor's original, physical signature prior to electronically filing such documents on the condition that, prior to filing, the attorney has verified with the debtor that the debtor has received the entire document(s) to be filed and has communicated with the debtor regarding the substance and purpose of the document(s), including the review of a bankruptcy petition, schedules, and statements; and further that the attorney has either (a) obtained the debtor's digital signature via any commercially available digital signed software that provides signature authentication and maintains a copy of the digitally

---

[111] *Protos v. Silver (In re Protos)*, 322 Fed. Appx. 930, 933 (11th Cir. 2009).

signed document(s) in the debtor's case file; or (b) obtains express written permission (including electronic mail) from the debtor to affix the debtor's signature to the document(s), and maintains a hard copy thereof in the file.[112]

While counsel for the Defendants admits that he did not fully comply with Administrative Order 20-06, the Defendants do not contend that they did not authorize counsel to file the petition, nor that he prepared the petition utilizing information not provided by the Defendants. Thereafter, on August 13, 2020, the Chapter 7 Trustee conducted the Defendants' § 341 Meeting of Creditors at which the Defendants were required to testify under penalty of perjury regarding their financial affairs, as well as the substance of the documents at issue. It was not until the Plaintiff filed the Complaint Objecting to Discharge on October 13, 2020 that the Defendants hired new counsel to amend their schedules. While the Defendants' discharge may only be denied pursuant to 11 U.S.C. § 727(a)(4)(A) for false oaths made in connection with their current case, the Court finds that the Defendants' overall knowledge and understanding of the bankruptcy process from their many prior bankruptcy filings contradicts the Defendants' argument that the repeated omissions from their Original Schedules and SOFA and other false oaths made in connection this case were made innocently, unintentionally, and inadvertently. To be clear, the Court finds that the Defendants' testimony lacked credibility and their demeanor was cavalier.

Mr. Jones admitted that he failed to attend all of the meetings with his attorney and did not independently verify the information in his petition which was filed under penalty of perjury. During his testimony, Mr. Jones could not explain the source of more than $3,600 in funds deposited into his checking account just a few months before the Defendants filed their 2020 Case.

---

[112]    Administrative Order 20-06.

32

Likewise, Mrs. Jones was unable or unwilling to identify the source of the funds. In addition to the unexplained source of the deposits, the Defendants admit that they failed to include regular contributions of income from Mrs. Jones' father either on their Original Schedule I nor on the Amended Schedule I. The Defendants further admit that they received WIC income in the amount of $142 per month throughout 2020 which was never disclosed in their Schedules nor included in their Means Test.

The Defendants also failed to include income in the amount of $3,294 in their Means Test calculation which Mr. Jones received in his January 23, 2020 paycheck for the reimbursement of adoption expenses, but argue that same is not taxable income. Regardless of whether the income should be included for purposes of calculating the Defendants' Means Test, the income is required to be disclosed on the Defendants' SOFA. The instructions to Question 5 directed the debtors to "[i]nclude income regardless of whether that income is taxable. Examples of *other income* are alimony, child support, Social Security, unemployment, and other public benefit payments; pensions; rental income; interest; dividends; money collected from lawsuits; royalties; gambling and lottery winnings."[113]

In addition to failing to disclose all sources of income on both their Original Schedules and Amended Schedules, the Defendants made numerous omissions on their Original SOFA including the joint bank account from which Mrs. Jones admittedly withdraws funds on a monthly basis, their ownership interest Cuts Salon, Inc., the 2006 Volvo, income for 2018, 2019 and 2020, and withdrawals of income in 2018 and 2019 from Mr. Jones' 401(k). The parties also dispute whether

---

[113] *See* Plaintiff's Exhibit 28, SOFA, Part 2, Question 4.

the Defendants should have disclosed the Agreement with Walker Brother's for the home in which the Defendants reside. The Court having assessed the credibility and demeanor of the Defendants during the trial and given the cumulative nature of the omissions in this case, finds that the Plaintiff has proven by a preponderance of the evidence that the Defendants made numerous false oaths knowingly and fraudulently for purposes of § 727(a)(4)(A), evidence of which the Defendants' testimony and evidence failed to overcome.

### iii. Materiality

Finally, the Defendants argue that the false oaths and omissions at issue did not lead to the discovery of assets and were, thus, not material. When determining whether false oaths made in connection with a debtor's case should bar a debtor's Chapter 7 discharge, the test for materiality is whether the false oaths were related to the debtor's business transactions or estate. In *In re Chalik*, the Eleventh Circuit explained that false oaths regarding worthless assets may also constitute a material omission which precludes discharge under § 727(a)(4)(A).[114] The Court of Appeals stated:

> The subject matter of a false oath is "material," and thus sufficient to bar discharge, if it bears a relationship to the bankrupt's business transactions or estate, or concerns the discovery of assets, business dealings, or the existence and disposition of his property. . . . The recalcitrant debtor may not escape a section 727(a)(4)(A) denial of discharge by asserting that the admittedly omitted or falsely stated information concerned a worthless business relationship or holding; such a defense is specious . . . It makes no difference that he does not intend to injure his creditors when he makes a false statement. Creditors are entitled to judge for themselves what will benefit, and what will prejudice them. . . . The veracity of a bankrupt's statements is essential to the successful administration of the Bankruptcy [Code].[115]

---

[114] *In re Chalik,* 748 F.2d 616; *See also In re Whigham,* 770 Fed. Appx. at 546 ("false oaths regarding worthless assets may bar discharge of debts").

[115] I*n re Chalik,* 748 F.2d at 618; *See also In re Phillips,* 476 Fed. Appx. at 819.

If an omission could lead to the discovery of other assets, business dealings, or the existence and disposition of property, "it is irrelevant that the omission concerned worthless assets or did not injure any creditor."[116] "A materiality standard based on an omitted item's relative value to the amount of assets and liabilities at issue in the case would encourage debtors to pick and choose which information to disclose based on the debtor's own assessment of value or significance to the bankruptcy administration."[117] Instead, "creditors are entitled to judge for themselves what will benefit, and what will prejudice, them."[118] Accordingly, "[t]he veracity of [a debtor's] statements is essential to the successful administration of the Bankruptcy [Code]" which requires full and accurate disclosure.[119]

For instance, the Eleventh Circuit rejected a debtor's argument that an account held in trust for her son was not properly characterized as her asset, and thus her failure to disclose the account was not material, explaining that the argument was without merit given that the debtor was the owner of the account held in trust and had immediate access to the funds. Further, even though settlement funds deposited by the debtor into the account had been depleted by the time she filed her Chapter 7 petition, the account constituted an asset which should have been disclosed because false oaths regarding even worthless assets may bar discharge.[120]

In this case, the Court finds that the Defendants' false oaths and omission were not de minimus based upon the testimony and evidence presented. The omissions were real and

---

[116]  *In re Phillips*, 476 Fed. Appx. 813, 816 (11th Cir. 2012).
[117]  *Id.*
[118]  *Id.*
[119]  *In re Chalik,* 748 F.2d at 618.
[120]  *In re Whigham,* 770 Fed. Appx. at 546.

substantial, not merely technical and conjectural. The Defendants repeatedly failed to disclose material sources of income, made numerous false oaths on their Original SOFA, and have generally been disingenuous throughout their case, choosing only to disclose what they must when confronted with direct evidence of their false oaths and omissions. As the Eleventh Circuit has explained, debtors are not allowed to "pick and choose which information to disclose based on [their] own assessment of value or significance to the bankruptcy administration."[121]

Before concluding, the Court must address its concern regarding the multiple cases filed by the Defendants using a plethora of lawyers that led to inconsistent, inaccurate, and misleading representations in many bankruptcy cases. This is an abuse of the bankruptcy system. While not determinative regarding the discharge issue, the Court notes that the actions taken by the Defendants are evidence of their attempt to manipulate the bankruptcy process to their advantage and to the detriment of creditors. In a similar case, *LaBarge v. Rotellini (In re Rotellini),* 510 B.R. 241 (Bankr. E.D. Mo. 2014), the bankruptcy court dismissed the seventh case filed by debtor and enjoined the debtor from refiling for 365 days where the information provided in the seventh case was not consistent with representations made in prior cases. The debtor blamed his incomplete, inaccurate, and inconsistent filings on the fact that previous cases were filed both *pro se* and with different attorneys. The bankruptcy court explained that the integrity of the bankruptcy system depends upon full and complete disclosure by debtors and stated that creditors should not "suffer the consequences and inconveniences of . . . incomplete and inaccurate filings," because "[i]t is the duty of the debtor to proceed with full and complete candor[.]"[122] Likewise, in the present

---

[121]     *In re Phillips*, 476 Fed. Appx. 813, 816 (11th Cir. 2012).
[122]     *LaBarge v. Rotellini (In re Rotellini),* 510 B.R. 241, 246 (Bankr. E.D. Mo. 2014).

36

case, the Court finds that any suggestion by the Defendants that inconsistent or inaccurate statements made in prior cases or the false oaths made connection with their current case were inadvertent because the cases were filed by different attorneys is not credible and is specious. The integrity of the bankruptcy system requires the Court to raise its concern regarding the actions taken by the Defendants in filing their many bankruptcy cases even though this is not the basis for the ruling in this Adversary Proceeding.

## CONCLUSION

Based upon the forgoing, the Court finds that the Plaintiff has proven by a preponderance of the evidence that the Defendants knowingly and fraudulently made materially false oaths and accounts in connection with their case for purposes of § 727(a)(4)(A). The Court further finds that the Defendants failed to produce sufficient evidence to convince the Court not to deny their discharge. The Court acknowledges that the denial of Defendants' discharge is an extraordinary remedy, but finds that the penalty is appropriate under the circumstances of this case.

A separate judgment will be entered consistent with this Memorandum Opinion.

**IT IS SO ORDERED.**

Dated this the 13th day of July, 2021.

/s/ Clifton R. Jessup, Jr.
Clifton R. Jessup, Jr.
United States Bankruptcy Judge

37